705 N.W.2d 6 (2005)
In the Interest of T.R., Minor Child,
L.R., Mother, Appellant.
No. 05-0178.
Supreme Court of Iowa.
October 14, 2005.
*7 E.H. Philiph, Sibley, for appellant mother.
Joseph M. Feller of Koopman, Kennedy & Feller, Sibley, for appellants maternal grandparents.
Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, and Robert E. Hansen, County Attorney, for appellee State.
Roger D. Bindner of Klay, Veldhuizen, Bindner, De Jong & Jacobsma P.L.C., Orange City, for appellees paternal grand-parents.
Shannon Sandy, Spirit Lake, for minor child.
LAVORATO, Chief Justice.
Mother appeals a child-in-need-of-assistance permanency order that changed custody and directed the county attorney to file a petition to terminate the mother's parental rights. The State moved to dismiss the appeal, alleging that the underlying order was not a final appealable order and grounds for permitting an interlocutory appeal had not been proven. Because we agree with the State, we grant its motion to dismiss the appeal.

I. Background Facts.
T.R., the subject of this appeal, was born October 1, 1995. His mother, Laura, is thirty-six years old. His father, David, is deceased. David and Laura separated, David filed for divorce, and he died before the divorce was final.
David had become concerned about Laura's ability to care for T.R. For example, when T.R. was two, David came home from work and found Laura asleep on the couch during which time T.R. had disassembled an electrical circuit. In addition, Laura had mental health and substance abuse problems that interfered with her care of T.R. Because of his concern for T.R.'s safety and health, David quit his *8 overnight trucking job, got a day job, took T.R. to daycare during the day, and was home with T.R. at night. David assumed more and more care of T.R.
When David filed for divorce, the court awarded him temporary custody of T.R. During the divorce proceedings, Laura lived with her parents, the Franks.
In October 1999, David was diagnosed with leukemia. For approximately a year before David died in October 2000, T.R. lived with David and David's parents, the Roetzels. Following David's funeral, T.R.at the Franks' requestlived with them and their daughter, Laura.

II. Proceedings.
On October 28, 2002, the State filed a petition alleging that T.R. was a child in need of assistance. The petition alleged that T.R.
has suffered or is imminently likely to suffer harmful effects as a result of:
Failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child. [Iowa Code §] 232.2(6)(c)(2).
[A] parent's or guardian's mental capacity or condition, imprisonment, or drug or alcohol abuse [that] results in the child not receiving adequate care. [Iowa Code §] 232.2(6)(n).
In November 2002, following an uncontested adjudicatory hearing, the court adjudicated T.R. a child in need of assistance upon the grounds alleged in the petition. The court allowed custody of T.R. to remain with Laura subject to protective supervision by the Iowa Department of Human Services (DHS). The court ordered Laura to complete a substance abuse evaluation and follow all recommendations made as a result of the evaluation.
In March 2003, following an uncontested dispositional hearing, the court found that "reasonable efforts have been made to prevent the need for an out-of-home placement [of T.R.] through substance abuse services for Laura, but despite such services, it is contrary to the welfare of [T.R.] to return to his mother's care" until substance abuse and related issues have been resolved. The court placed temporary custody of T.R. jointly with the maternal and paternal grandparents with physical custody to be with the maternal grandparents subject to protective supervision by DHS.
In September 2003, following a review hearing, the court maintained temporary custody with the maternal and paternal grandparents with physical custody to be with the maternal grandparents subject to protective supervision by DHS.
In March 2004, Laura was dismissed from services because of her refusal to participate. Laura had kept only thirty percent of appointments with in-home services.
In January 2005, following a contested review and permanency hearing, the court entered a permanency order. See generally Iowa Code § 232.104 (2003). The court concluded that T.R. should remain adjudicated a child in need of assistance, transferred physical custody to the paternal grandparents, ordered liberal visitation between T.R. and his maternal grandparents, and supervised visitation between T.R. and his mother at the discretion of DHS. Finally, pursuant to Iowa Code section 232.104(2)(c), the court directed the county attorney to institute proceedings to terminate Laura's parental rights.
Laura appealed. The State moved to dismiss her appeal, contending that a permanency order directing termination proceedings is interlocutory and that such interlocutory *9 appeals are rarely granted. Laura resisted the motion. She maintains that the permanency order from which she appealed is a final order because the order "substantially affect[s] the child's situation." In the alternative, Laura requests that her appeal be treated as an application for interlocutory appeal pursuant to Iowa Rule of Appellate Procedure 6.2. See Iowa R.App. P. 6.1(4).
In a single-justice order, this court directed that the motion to dismiss be submitted with the appeal. See id. r. 6.22(6) (authority of a single justice to entertain motions). The order stayed the termination proceedings pending the outcome of the appeal.
The State moved for the court to vacate the single-justice order and to grant the State's motion to dismiss. See id. (allowing party to seek review of action of a single justice). The court entered an order confirming the single-justice order.
Later, the paternal grandparents and T.R.'s guardian ad litem and attorney filed a joinder with the State's brief. The maternal grandparents filed a joinder with Laura's brief.

III. Issues.
The first issue we must address is whether the State's motion to dismiss should be granted. In the event we do not grant the motion to dismiss, Laura raises two substantive issues: whether it was in T.R.'s best interest to (1) change physical custody from the maternal grandparents to the paternal grandparents and (2) direct the county attorney to commence termination of parental rights proceedings rather than allow guardianship with either set of grandparents. Because we think the State's motion to dismiss should be granted, we restrict our discussion to that issue.

IV. Motion to Dismiss.
The State filed a motion to dismiss Laura's appeal, asserting the appeal was not from a final judgment and that criteria permitting an interlocutory appeal were not satisfied. Laura's appeal challenges two aspects of the permanency order: the order changing physical custody of T.R. and the order directing the county attorney to initiate termination of parental rights when guardianship could be pursued. She argues the portion of the order transferring custody "should be considered final for purposes of appeal because the order disposed of the issue of where the child was to be placed." She therefore concludes that she should not have to obtain permission to appeal that portion of the order.
A. Finality of order. Iowa Code section 232.133 governs appeals from juvenile court orders. This provision pertinently provides:
(1) An interested party aggrieved by an order or decree of the juvenile court may appeal from the court for review of questions of law or fact....
(2) Except for appeals from an order entered pursuant to section 232.117 [terminationfindingsdisposition], appellate procedures shall be governed by the same provisions applicable to appeals from the district court.
Iowa Code § 232.133(1), (2). As we noted in In re W.D., this statute "provides no special basis for an appeal as a matter of right." 562 N.W.2d 183, 185 (Iowa 1997).
Like appeals from all other orders, right of appeal depends on whether a juvenile court order is "final." Id. On this point, Iowa Rule of Appellate Procedure 6.1 pertinently provides:
(1) All final judgments and decisions of the district court and any final adjudication in the district court under Iowa *10 R. Civ. P. 1.444 [pleading over; election to stand], involving the merits or materially affecting the final decision, may be appealed to the supreme court, except as provided in this rule and in rule 6.3 [amount in controversy] ....
....
(3) No interlocutory ruling or decision may be appealed except as provided in rule 6.2 [describing criteria for permitting an interlocutory appeal] until after the final judgment or order....
(4) If an appeal to the supreme court is improvidently taken because the order from which appeal is taken is interlocutory, this alone shall not be ground for dismissal. The papers upon which the appeal was taken shall be regarded and acted upon as an application for interlocutory appeal under rule 6.2, as if duly presented to the supreme court at the time the appeal was taken.
Iowa R.App. P. 6.1(1), (3), (4).
In sum, a party may appeal as of right from any final order or judgment. Iowa R.App. P. 6.1(1); IBP, Inc. v. Al-Gharib, 604 N.W.2d 621, 627 (Iowa 2000). In contrast, if the ruling or decision is interlocutory, we lack jurisdiction unless we grant permission to appeal. Iowa R.App. P. 6.1(3); Al-Gharib, 604 N.W.2d at 627.
A final order or judgment is
"one that finally adjudicates the rights of the parties, and it must put it beyond the power of the court which made it to place the parties in their original positions. It is a determination which may be enforced by execution or in some similar manner."
Al-Gharib, 604 N.W.2d at 627 (citation omitted). "A ruling is not final when the trial court intends to do something further to signify its final adjudication of the case. Furthermore, a juvenile court order is not final unless it disposes of all the issues." In re C.S., 516 N.W.2d 851, 857 (Iowa 1994) (citations omitted).
On the other hand, an interlocutory order is one that "directs an inquiry into a matter of fact preparatory to a final decision." In re Long, 313 N.W.2d 473, 476 (Iowa 1981); accord C.S., 516 N.W.2d at 857. "[A] ruling is interlocutory if it is not finally decisive of the case." Al-Gharib, 604 N.W.2d at 627 (quotation marks omitted) (citations omitted); accord Johnson v. Iowa State Highway Comm'n, 257 Iowa 810, 812, 134 N.W.2d 916, 918 (1965).
We have long followed the general policy against piecemeal appeals. See Bennett v. Ida County, 203 N.W.2d 228, 233 (Iowa 1972) (recognizing that policy and noting that as a general rule an appeal will not lie unless there has been a final disposition of the case). As part of the policy against piecemeal appeals, the court has developed the "dependent upon or intertwined with" causes of action rule. In Stockburger v. Robinson, we held that a husband's claim for loss of consortium was dependent upon or intertwined with the wife's claim against the defendant. 270 N.W.2d 453, 454 (Iowa 1978). For that reason an order dismissing the husband's claim against the defendant was not a final order. Id. The court reasoned that the determinative issues remaining in the case could affect the final resolution of the issues between the husband and the defendant. Id. For example, if the wife proved negligence and proximate cause in obtaining a favorable judgment, the husband need only prove his injury and damages. Id.
Iowa law is settled that a district court order directing the filing of a petition for termination of parental rights is an interlocutory ruling. Our court of appeals dismissed an appeal of an order directing DHS to file a termination of parental rights petition. See In re A.C., 443 *11 N.W.2d 732, 732-33 (Iowa Ct.App.1989). The court concluded that an order directing the filing of the termination petition was not a final appealable judgment. Id. at 732.
Later, noting the court of appeals decision in A.C., we likewise held that an order directing the State to file a petition to terminate parental rights is not a final judgment appealable as a matter of right. See W.D., 562 N.W.2d at 184, 186. We reasoned that the order
did not dispose of all the issues in this case, and it did not conclusively adjudicate the rights of the parties. In fact, there can be no disposition and "final" order until after the termination hearing.
Id. at 186. Clearly, then, the portion of the permanency order at issue here directing the county attorney to institute termination proceedings is not a final appealable order.
We think that the change in custody provision in the permanency order does not make it final. Both portions of the permanency order  change of custody and direction to the county attorney to file a termination of parental rights petition  pertain directly to the issue of the placement of the child. The final order in the termination proceeding will finally determine that issue.
Iowa Code section 232.117 sets out what may happen following a termination hearing. If the court concludes the facts are not sufficient to terminate parental rights, the court must dismiss the petition. Iowa Code § 232.117(2). In the event the court does not terminate Laura's parental rights, the court could conclude T.R. is a child in need of assistance and enter an order pursuant to four different code sections: Iowa Code sections 232.100 (suspended judgment), 232.101 (retention of custody by parent), 232.102 (transfer of legal custody of child and placement), or 232.104 (permanency hearing). Id. § 232.117(5).
If the court concludes the facts are sufficient to terminate, the court may terminate Laura's parental rights. Id. § 232.117(3). If Laura's parental rights are terminated, the code contemplates evaluating the placement of T.R. See id. § 232.117(3)(a)-(c) ("If the court terminates the parental rights of the child's parents, the court shall transfer the guardianship and custody of the child to one of the following: [providing a list of placement options].").
Under any of these provisions, custody could be affected.
In contrast, the change of custody portion of the permanency order is temporary in nature and is dependent upon what the district court will do in the termination proceeding. In effect, the change of custody provision in the permanency order will inure or be subsumed in the final termination order in the termination proceeding. For that reason, we think the change of custody provision in the permanency order is dependent upon or intertwined with the portion of the order directing the county attorney to file the termination of parental rights petition. Allowing an appeal as a matter of right under these circumstances would violate our rule against piecemeal appeals. And, until the court makes a determination following the termination hearing, there will be no final adjudication of the rights of the parties.
B. Application for interlocutory appeal. Although we conclude the order changing custody is not a final appealable judgment, we can, as Laura asks, consider the appeal as filed as an application for interlocutory appeal and grant it under Iowa Rule of Appellate Procedure 6.1(4) set out earlier in this opinion. Of course, granting the "application" is necessary to *12 confer jurisdiction over this case. See Iowa R.App. P. 6.2(1); W.D., 562 N.W.2d at 185.
Iowa Rule of Appellate Procedure 6.2(1) provides the grounds for allowing an interlocutory appeal:
Any party aggrieved by an interlocutory ruling or decision, including a party whose objections to jurisdiction have been overruled, may apply to the supreme court or any justice thereof to grant an appeal in advance of final judgment. Such appeal may be granted ... on finding that such ruling or decision involves substantial rights and will materially affect the final decision and that a determination of its correctness before trial on the merits will better serve the interests of justice.

(Emphasis added.)
Temporary custody orders in dissolution proceedings are analogous to the order changing custody here. We have held that as a matter of practicality and policy, temporary custody orders in dissolution proceedings should not be considered final orders. In re Marriage of Denly, 590 N.W.2d 48, 50-51 (Iowa 1999). We reasoned that such orders are "subsumed in the final custody determination and are not judgments that can be separately enforced" like orders for temporary alimony and attorney fees which are independent orders that can be enforced separate from the final decree. Id. at 50. We reasoned further that holding such orders to be final orders would run counter to our rule that custody of children should be quickly fixed and seldom disturbed. Id. at 51. In addition, refusing to allow such appeals promotes judicial economy and efficiency, waiting for a final order would give our court the benefit of the district court's careful consideration of the issue, and permitting piecemeal appeals subjects the child to the uncertainties of litigation. Id.
For the same reasons, we refused to grant the interlocutory appeal. Id. at 52. In addition, we held that the appeal failed to satisfy two of the requirements for granting interlocutory appeal because the order will not materially affect the final decision and a determination of the order's correctness before trial on the merits will not better serve the interests of justice. Id.
Our reasoning in Denly is equally supportive of our decision not to grant the interlocutory appeal here. T.R.'s placement should be fixed, and reviewing a final, rather than an interlocutory, order is a better use of judicial resources. In addition, once the proceedings have terminated, a reviewing court will have a complete record in the event of an appeal. As in Denly, we think the order changing custody will not materially affect the final decision and a determination of the order's correctness before trial on the merits will not better serve the interests of justice.
More important, delays in termination of parental rights cases are "antagonistic" to the child's best interest. In re C.M., 652 N.W.2d 204, 211 (Iowa 2002). T.R.'s custody has not finally been determined because of the impending termination of parental rights proceeding. In the event of an appeal from the termination decision, that appeal would be given expedited review and accorded the highest priority at all stages of the appellate process. See Iowa R.App. P. 6.17 (cases involving expedited times for filings); see generally Iowa R.App. P. 6.151-6.154 (appeals in child in need of assistance and termination cases). As we noted in W.D., "based on the clear language of the case law, interlocutory appeals should rarely be permitted prior to a juvenile court's disposition." 562 N.W.2d at 186.

*13 V. Disposition.
In sum, we conclude that the order here was interlocutory and that we should deny permission to appeal from it. We therefore grant the State's motion to dismiss the appeal.
APPEAL DISMISSED.