# IN THE COURT OF APPEALS OF IOWA

No. 22-0279
Filed May 25, 2022

**IN THE INTEREST OF M.S. and A.S.,**
**Minor Children,**

**B.K., Father,**
　　　Appellant,

**J.S., Mother,**
　　　Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Charles D. Fagan, District Associate Judge.

A mother and father separately appeal the termination of their parental rights to their daughters. **AFFIRMED ON BOTH APPEALS.**

Roberta J. Megel of State Public Defender Office, Council Bluffs, for appellant father.

Kyle J. McGinn of McGinn, Springer & Noethe, PLC, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Kristen Bracker of the Bracker Law Firm, Council Bluffs, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**TABOR, Judge.**

Jordan and Brian separately appeal the juvenile court order terminating their parental rights to two young daughters: M.S., born in 2019, and A.S., born in 2018. Brian argues the State did not offer clear and convincing evidence to support the grounds for termination.[1]  Jordan likewise disputes the State's proof of the statutory grounds.  She also argues the court abused its discretion in denying her motion to continue the permanency hearing, an argument the State interprets as a request to continue placement under Iowa Code section 232.104(2)(b) (2021).

After examining the record, we find ample evidence to support termination of both parents' rights and affirm the juvenile court's order.[2]

## I.      Facts and Prior Proceedings

The DHS started looking into the safety of M.S. and A.S. in July 2020 when police arrested Brian for assaulting Jordan.[3]  The young children witnessed the violence.  Brian was ordered to have no contact with Jordan or the children.  When

---

[1] Brian's petition on appeal mentions in passing that the Department of Human Services (DHS) did not make reasonable efforts to reunite him with the children, termination is not in the children's best interests, and he "just needs more time." Those issues are insufficiently developed to address.  Even in expedited appeals, the appellant must do more than offer conclusory statements.  *See* Iowa Rs. App. P. 6.201(1)(d) ("The petition on appeal shall substantially comply with form 5 in rule 6.1401."), .1401–Form 5 ("[S]tate what findings of fact or conclusions of law the district court made with which you disagree and why, generally referencing a particular part of the record, witnesses' testimony, or exhibits that support your position on appeal . . . .  General conclusions, such as 'the trial court's ruling is not supported by law or the facts' are not acceptable.*").

[2] We review termination proceedings de novo.  *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).  We respect the juvenile court's factual findings but are not required to adopt them.  *Id.*  The State must prove the grounds for termination by clear and convincing evidence.  *Id.*

[3] The DHS scrutiny was not new to the parents.  They lost parental rights to three older children in 2017 and 2018.

the DHS could not locate the family, it closed its investigation. Then, in February 2021, the DHS received reports that Brian was violating the no-contact order. Rather than remove the children, the DHS implemented a safety plan that required Jordan to move into her parents' home with the children. But a few weeks later, Jordan took the girls and left her parents' home without informing the DHS of her whereabouts. So the DHS placed the children in foster care. The court adjudicated M.S. and A.S. as children in need of assistance (CINA) in April 2021.[4]

Over the next ten months, neither parent met the DHS's expectations for reunification. Jordan's substance-abuse evaluation recommended intensive outpatient treatment. But she was twice discharged from treatment programs for lack of attendance. She was also inconsistent in drug testing. She entered inpatient treatment just eight days before the January 2022 termination trial. Jordan tried to address her experience as a domestic violence victim—starting, but not completing, a program called Journey Beyond Abuse. Although she denied having any contact with Brian, the DHS was concerned that Jordan maintained a relationship with him despite the history of abuse. Jordan did not maintain stable housing or employment. Her visits with the children were inconsistent and stopped after November 2021.

As for Brian, he pleaded guilty to domestic abuse assault in August 2021 and was placed on probation. Throughout the proceedings, he failed to take any steps toward reunification. He did not stay in touch with the DHS. He did not participate in mental-health or substance-abuse treatment. He did not have any

---

[4] Neither parent attended either the removal hearing or the CINA adjudication hearing.

visits with the children because of the no-contact order. And, despite a court order, he never completed the Iowa Domestic Abuse Program. By the time of the termination trial, he was in jail for violating his probation.

The juvenile court terminated the rights of both parents under Iowa Code section 232.116(1), paragraphs (e), (g), (h), and (*l*). They now appeal.

## II. Analysis

## A. Jordan's Appeal

## 1. Delayed Permanency

Jordan starts by arguing that the juvenile court abused its discretion by denying her motion to continue the permanency hearing set for early November 2021. She moved in late October to postpone that hearing because she had "recently enrolled in a dual purpose inpatient Substance Abuse and Battered Women's program at the Lydia House in Omaha, Nebraska." Her motion asserted that the programming would help her reunify with the children and the court had more time before it was necessary to determine the permanency goal. She also advised that she did not know the duration of the inpatient program. The court denied the motion, reasoning "this case has been open for eight months and parents have had ample opportunity to participate in services but have failed to do so." After the permanency hearing, the court directed the State to file a termination petition.

Now Jordan contends that the court had four more months under Iowa Code section 232.104 to hold a permanency hearing and the "expedited" hearing disregarded her acceptance into the treatment program. Denying the continuance, in her view, ensured that she would not be ready to resume care of the children.

She speculates that the State could not have met its burden to terminate under section 232.116, paragraphs (e) and (h) if the court had continued the permanency hearing.

The State defends the timing of the permanency hearing, noting it was free to seek termination, if the grounds were met, after six months for these children who were younger than four years. *See* Iowa Code § 232.116(1)(h). The State also reads Jordan's argument as a request for continued placement of the children. *See* Iowa Code § 232.104(2)(b). Under that provision, the court may delay permanency if it determines the need for removal will no longer exist at the end of the extension.

Like the State, we view Jordan's argument less as contesting the denial of her motion to continue the permanency hearing and more as challenging the court's refusal to defer the permanency decision. Rather than a free-standing result, the court's denial of the motion to continue the permanency hearing "is subsumed in the final termination order." *See In re T.R.*, 705 N.W.2d 6, 11 (Iowa 2005). The court's decision to terminate parental rights rather than defer permanency is supported by the record. Jordan's pursuit of treatment was admirable, but her belated effort did not instill confidence that she would become a safe parent in six months, after years of involvement with the DHS. *See In re A.A.G.*, 708 N.W.2d 85, 93 (Iowa Ct. App. 2005) (considering "uncertainty about parent's sobriety").

## 2.    Statutory Grounds

Jordan next argues the State did not offer clear and convincing evidence to satisfy the elements of Iowa Code section 232.116(1), paragraphs (g) and (*l*). But

she does not contest termination under paragraphs (e) and (h). So we can affirm on either of those grounds. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (holding even if only one ground is proven, the court may order termination).

Although uncontested, we find the State offered sufficient proof under paragraph (h). The children are both under four years, they have been adjudicated as CINA, they have been removed from their mother's custody for more than six straight months, and—because she was just beginning treatment at the time of the termination hearing—they cannot be returned to her care at the present time. *See* Iowa Code § 232.116(1)(h); *see also In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (interpreting statutory language "at the present time" as the date of the termination hearing).

## B. Brian's Appeal

Brian contests all four statutory grounds for terminating his parental rights. As we did in Jordan's case, we choose to affirm under paragraph (h). On that ground, he argues that the children could "eventually" be returned to his care. But the statute measures the parent's readiness at the time of the hearing. *See* Iowa Code § 232.116(1)(h)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Because of his domestic violence and his failure to comply with probation, Brian was not a safe or available parent for his children. The record supports termination of his parental rights.

**AFFIRMED ON BOTH APPEALS.**